UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SAMMY J. CHRISMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 3:08-0505 |
| ) | Judge Echols |
| M & T BANK and SILVER HILL ) | |
| FINANCIAL, LLC, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM

This case involves Plaintiff Sammy J. Chrisman's challenges to the prepayment fees and penalties he would be assessed if he paid off a loan before its maturity date. Defendants M & T Bank ("M &T") and Silver Hill Financial, LLC ("Silver Hill") have filed a Motion for Summary Judgment (Docket Entry No. 17), to which Plaintiff has responded in opposition (Docket Entry No. 23), and Defendants have filed a reply (Docket Entry No. 26).

### I. FACTUAL BACKGROUND

The vast majority of the facts in this case are not disputed by the parties. The relevant facts are as follows.

Plaintiff resides in Bell Buckle, Tennessee and owns and operates "B & L Automotive," a small automobile repair garage in Murfreesboro, Tennessee. In the Fall of 2006, Plaintiff decided he needed to borrow money to remodel and improve his commercial automotive garage.

Towards that end, on September 19, 2006, Plaintiff executed a Promissory Note as well as a Deed of Trust and Security Agreement ("Deed of Trust") to secure a loan in the amount of $135,000 from Silver Hill Financial, LLC. Plaintiff signed both the Promissory Note and the Deed

1

of Trust, and initialed each page. Further, prior to closing on the loan, Plaintiff signed a Final Loan Term Sheet ("Term Sheet") which outlined "certain key business terms of the proposed loan with Silver Hill[.]" (Term Sheet p. 1). On March 1, 2007, servicing of the loan was transferred to M & T.

The Deed of Trust indicated that Plaintiff's Murfreesboro commercial property was to serve as security for the loan. That document also indicated that the loan "is solely for the business purpose of Borrower, and is not for personal family, household, or agricultural purposes." (Deed of Trust § 5.10).

The Promissory Note was payable in monthly installments over fifteen years. The Promissory Note, Deed of Trust, and Term Sheet contained certain provisions regarding prepayment of the loan, including a lockout period.

The Promissory Note discussed prepayment and the lockout period, as follows:

**7. PREPAYMENT**

    a. Lockout Period: Borrower shall not be permitted to make any full or partial prepayment of the principal balance of this Note (a "Prepayment") prior to that date that is eighty-four (84) months after the date of this Note (the "Lockout Period"). If, for any reason, a Prepayment is made during the Lockout Period (a "Lockout Prepayment"), Borrower shall, simultaneously therewith, be obligated to pay: (i) the aggregate amount of interest which would have accrued on the unpaid principal balance of this Note from the date of such Lockout Prepayment through the expiration date of the Lockout Period (the "Lockout Fee"), plus (ii) all amounts specified in Section 7(b) below).

    b. Prepayment Period: At any time during the Prepayment Period (as defined below), the principal balance of this Note may be prepaid in whole, but not in part, pursuant to the terms contained in this Section 7. If Borrower makes any Prepayment within the first Seven years after the date of this Note (the "Prepayment Period"), the Borrower shall be obligated to pay to Lender the following amounts:

2

> (i) an amount equal to Five percent (5.000%) of the then outstanding unpaid principal balance of this Note (the "Prepayment Consideration"); and
>
> (ii) all accrued interest on the outstanding principal balance to and including date on which the Prepayment is made; and
>
> (iii) all other sums due under this Note, the Security Instrument and all Other Security Documents.
>
> c. <u>Prepayments Without Consideration</u>: No Prepayment Consideration or Lockout Fee (if any) shall be due or payable with respect to any full or partial Prepayment made by Borrower after the expiration of the Prepayment Period.

(Docket Entry No. 20, Exh. 1, Promissory Note ¶¶ 7(a) & (b)). The Deed of Trust also discussed prepayment, utilizing the following language:

> **Section 9.1. <u>PREPAYMENT BEFORE EVENT OF DEFAULT.</u>** The Debt may not be prepaid in whole or in part except in strict accordance with the express terms and conditions of the Note.

(Docket Entry No. 20, Exh. 2, Deed of Trust § 9.1). Finally, the Term Sheet defined "Lockout" as follows:

> LOCKOUT: Loan may not be repaid in whole or in part at any time during the first seven years of the term (the "Lockout Period"). If Borrower makes any prepayment during the Lockout Period, Borrower shall be required to pay the prepayment penalty plus all interest accrued during the Lockout Period of the then outstanding principal balance of the loan.

(Docket Entry No. 20, Exh. 3, Term Sheet at 1).

After learning that he could receive better loan terms from another lender, Plaintiff inquired about paying off his loan. At Plaintiff's request, M & T provided a payoff statement to the Plaintiff

3

which indicated that as of March 13, 2007, the payoff amount was $227,857.09.[1] That figure included the remaining principal balance of $133,304.15, administrative fees of $312.00, accrued interest of $1,096.98 and prepayment consideration of $93,143.96. Plaintiff, through counsel, then asked M & T to explain the $93,143.96 prepayment consideration figure. On April 26, 2007, M&T responded by indicating that the prepayment figure was calculated in accordance with the prepayment provision of the Note, including the Lockout provision contained in paragraph 7(a) and the 5% prepayment consideration contained in paragraph 7(b).

Based on these events, Plaintiff filed a "Complaint for Declaratory Relief and Damages" in the Rutherford County Circuit Court, alleging that the prepayment penalty was usurious and in violation of certain provisions of the Tennessee Code, including T.C.A. §§ 47-14-102, -103, -108, and -113. Defendants removed the action to this Court based upon diversity of citizenship.

After the case was removed to this Court, Defendants took Plaintiff's deposition. During the deposition, Plaintiff was asked about the reason for the loan, and the following exchange occurred:

Q. All right. So why did you decide to take this money out from Silver Hill?

A. I was going to remodel the building. I was wanting to add onto the building, and remodel it, and you know, kind of fix it up. It was an old Gulf Service Station, and it just needed a lot of stuff done to it. See, I have had it paid for three or four years, and I just thought now was the best time. The interest rates were kind of low, and my credit was good. So I thought now would be a good time to fix this thing up. So I just went down there and told him what I needed; and that was all there was to it. I always dealt with the same guy because he was easy to deal with.

Q. So I mean it was for commercial purposes –

A. Right.

---

[1] If Plaintiff paid the loan according to its terms, he would pay $261,418.75 over the fifteen year course of the loan.

4

Q. – this loan with Silver Hill.

A. Right. It was strictly for remodeling my station.

Q. All right. So this Silver Hill loan didn't go for family, personal, or household purposes, or anything like that?

A. No, no.

(Pf. Depo. at 22).

After the Motion for Summary Judgment was filed, Plaintiff filed an Affidavit in which he sought "[t]o clarify the (accurate) statement that I provided in my discovery deposition." (Pf. Aff. ¶ 4). In his Affidavit, Plaintiff basically states that he did, in fact, intend to remodel his garage. However, he claims that he was not in a position to do so when he received the loan because, at that time, he and his wife were considering purchasing another home, among other things. When Plaintiff received the proceeds of the loan, he placed those proceeds in an interest bearing account. The account remained open during the next eighteen months, during which time Plaintiff would draw from the account for personal finances, such as the purchase of two cars and payment of $40,000 on a home which he and his wife had purchased. Plaintiff further claims that he would "pay back" the account. When he was finally ready to remodel his automotive garage in April 2008, the account was almost back up to $135,000, which is the principal amount loaned by Silver Hills.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be

5

addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

In the opening of his response brief, Plaintiff characterizes the issue before the Court as whether there are legal protections for a "small family-owned garage business" to prevent "what appears to be a patently unconscionable penalty" which would require "'prepayment consideration' of $93,143.96 on a note with a principal balance of $135,000?" (Docket Entry No. 23 at 1). While Plaintiff categorizes the prepayment as a usurious 70% penalty, he unfortunately does not provide a legal basis for eliminating his contractual obligation.

In support of his claim, Plaintiff points to several provisions in Title 47 of the Tennessee Code relating to Commercial Instruments and Transactions. He argues that the prepayment penalty constitutes "usury," as that term is defined by T.C.A. § 47-14-102(11). (Complaint ¶ III). He also "asserts that the 'penalty' demanded by the Defendants is in violation of the maximum effective rates permitted by T.C.A. § 47-14-103." (Id.). Plaintiff further claims that the prepayment penalty violates T.C.A. § 47-14-208, which is a Tennessee Code provision relating to prepayment of loans, and contracts restricting prepayment of loans. He further claims that Defendant's conduct in demanding the prepayment penalty constitutes "unconscionable conduct" within the meaning of

6

T.C.A. § 47-14-117. (Id.). Finally, Plaintiff claims that he did not understand what the lockout provisions meant and the same are ambiguous.

"In Tennessee, as in an apparent majority of the states, absent the payee's consent, there is no right to prepay a loan and avoid liability for interest accruing after the payment date and before maturity." Sound Stage Studios, Inc. v. Life Investors Ins. Co., 1988 WL 138827 at * 2 (Tenn. Ct. App. 1988). "This is the common law rule" pursuant to which "without the payee's consent, the only way to discharge a debt prior to its maturity is to tender the principal along with the interest for the whole term of the note." (Id.). After all, "a creditor can no more be compelled to accept payments on a contract before they are due than a debtor can be compelled to make such payments before they are due." Davis v. Hinton, 519 S.W.2d 776, 777 (Tenn. 1975).

The United States Court of Appeals for the Sixth Circuit has explained the reasons for allowing prepayment penalties as follows:

> The clear purpose for a prepayment penalty is to compensate the lender for the risk that market rates of interest at the time of prepayment might be lower than the rate of the loan being prepaid. Such a provision would compensate the lender for anticipated interest that would not be received if the loan were paid prematurely . . . . Among other things, a prepayment premium insures the lender against loss of his bargain if interest rates decline.

United States v. Harris, 246 F.3d 566, 573 (6th Cir. 2001)(citations and quotation marks omitted).

Because there is no absolute right to prepay a loan, the term "prepayment privilege" is actually "a misnomer since the fee is not a penalty at all, but a price paid for a right the payor did not otherwise have." Sound Stage, 1988 WL 138827 at * 2. Thus, the Tennessee Supreme Court in Davis described prepayment not as a right, but rather as a privilege and, in doing so, wrote:

> The courts of the vast majority of jurisdictions, including Tennessee, have held that when such a privilege is given the debtor by contract, it is not usurious to condition the exercise of the privilege upon the payment of interest to the date of

7

payment plus a bonus in addition. . . . The bonus may be interest to the stipulated maturity date. Even where the loan contract did not contain provisions for prepayment, and the loan was voluntarily repaid before maturity, the courts have held that the lender may receive or retain interest to the maturity date without being guilty of usury.

Davis, 519 S.W.2d at 777.

When the prepayment privilege is properly understood, it is clear that Plaintiff is not entitled to recover on the grounds that he advances.

Plaintiff's argument that the loan agreement violates T.C.A. §§ 47-14-102(11) and 47-14-103 is misplaced. The former statutory provision defines usury, while the latter sets maximum interest rates. Usury is defined in the statute as "the collection of interest in excess of the maximum amounts authorized by or pursuant to this chapter or any other statute." Tenn. Code Ann. § 47-14-102(12). Interest, however, "does not include *compensation for other purposes*, including, but not limited to, timeprice differentials, loan charges, brokerage commissions, or brokerage fees[.]" T.C.A. § 47-14-102(8)(emphasis added). As indicated, prepayment is a privilege and the amount charged is not usurious, at least so long as it does not exceed the amount of interest to the stipulated maturity date.

Recently, in Achee Holdings, LLC v. Silver Hill Financial LLC, 2009 WL 347751 (S.D. Tex. 2009), the United States District Court for the Southern District of Texas was presented with a claim that a Silver Hill loan which contained the same lockout provisions at issue in this case was usurious. The court disagreed because the prepayment penalty "does not constitute interest" and "[t]herefore, it cannot be usurious." Id. at *2. While the court in Achee applied Texas law, Texas law is similar to Tennessee law in several important respects. Both states recognize that a borrower has no right to prepay a loan in the absence of a contract which permits it. Both states prohibit usurious interest

rates. While Texas explicitly states in its Financial Code that a prepayment premium does not constitute interest, the absence of an explicit statutory provision in Tennessee is not dispositive since the code does not prohibit compensation for other purposes and case law recognizes the lender's right to collect interest to the maturity date. As the court stated in <u>Achee</u>, such interest and fees can be avoided – "the borrower may avoid paying the prepayment premium by paying the note according to its terms." <u>Id</u>.[2]

Plaintiff's reliance upon T.C.A. § 47-14-408 is also misplaced. That statute provides:

(a) Except as limited by statutory provisions expressly applicable thereto, the privilege of prepayment of a loan, in whole or in part, and any refunds or premiums with respect thereto, shall be governed by contract between the parties.

(b)(1) Any contract for a consumer loan that:

(a) Either prohibits prepayment or imposes a penalty for prepayment; and

(b) Is not subject to the provisions of the federal Truth-In-Lending Act, 15 U.S.C. § 1601, *et seq*. and its implementing Regulation Z, 12 C.F.R. § 226, *et seq*.

[(1)] Shall state on its face (in at least ten (10) point bold type in language separated from the other language in the contract by bold print dividing lines that it cannot be prepaid or that there is a penalty for prepayment.

(2) If such contract does not comply with the provisions of subdivision (1), the provision prohibiting prepayment or imposing the prepayment penalty shall be unenforceable.

(3) For purposes of this subsection, "consumer loan" means an extension of credit:

---

[2]For this same reason, the Court rejects Plaintiff's argument that the prepayment fees and interest amount to unconscionable conduct within the meaning of T.C.A. § 47-14-117.

9

> (A) To one (1) or more natural persons;
>
> (B) Primarily for personal, family or household purposes; and
>
> (C) Secured by real property or secured by personal property used or expected to be used as the principal dwelling of the consumer.

T.C.A. § 47-14-108.

Plaintiff argues that under the foregoing statute, any prepayment penalty, whether in the context of a consumer loan or a commercial loan, "must be governed by the laws applicable to Tennessee contract law, presumably including all contractual defenses which would be applicable to any business or consumer transaction" and that the fees charged in this case are not reasonable under Tennessee law. (Docket Entry No. 23 at 11). However, Plaintiff misreads the statute. The statute does not say that general Tennessee contract law and defenses govern prepayment penalties, or that prepayment penalties are subject to a reasonableness analysis. Instead, the statute says that the issue of prepayment penalties is to be governed by the contract between the parties. Here, Plaintiff was assessed fees in accordance with the terms of the contract between the parties.

True, the statute sets forth specific requirements for consumer loans and indicates that if those requirements are not met, any prepayment penalty is not enforceable. However, Plaintiff's suggestion that the transaction at issue in this case constitutes a consumer loan fails for numerous reasons.

First, the parties clearly envisioned that the transaction was a commercial loan and this was evidenced by the loan paperwork. The Deed of Trust indicated that Plaintiff's Murfreesboro commercial property was to serve as security for the loan and that the loan "was solely for the

10

business purpose of Borrower, and is not for personal family, household, or agricultural purposes." (Deed of Trust § 5.10).

Second, Plaintiff admitted in his deposition that the loan at issue was a commercial loan "strictly for remodeling [his] station" and that the loan was not used for family personal, or household purposes. (Pf. Depo. at 22). While Plaintiff attempts to back away from this testimony in his Affidavit filed in opposition to the Motion for Summary Judgment, "statements, which contradict h[is] prior deposition testimony, do not create a genuine issue of material fact at the summary judgment phase." Barrett v. Whirlpool Corp., 2009 WL 425969 at *12 (6th Cir. 2009). Regardless, the fact that Plaintiff and his wife may have used the loan proceeds for personal matters does not translate what was understood by the parties to be a commercial loan into a consumer loan. See, Quebec Printing Corp. v. L & B Mfg. Co., 209 S.W.3d 565, 578 (Tenn. Ct. App. 2006)("The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern" and the "parties' intent is presumed to be that specifically expressed in the body of the contract.")

Third, accepting the belated Affidavit as true, the transaction at issue would still not fit within the consumer loan provision of T.C.A. § 47-14-108. Under the statute, a consumer loan must be "[s]ecured by real property or secured by personal property used or expected to be used as the principal dwelling of the consumer." T.C.A. § 47-14-109(b)(3)(C). In this case, the loan was secured by the garage in Murfreesboro and there is no evidence that this facility was used or expected to be used as the principal dwelling of the Plaintiff and his family.

In his reply brief, Plaintiff raises an additional claim which was not set forth in his Complaint. Plaintiff argues that the transaction at issue violates the federal Truth-in-Lending Act

11

("TILA"), 15 U.S.C. § 1601 *et seq.* However, "extensions of credit primarily for business, commercial, or agricultural purposes" are exempted from TILA. "When there is a dispute between parties as to the type of transaction, '[t]he plaintiff has the burden of showing that the disputed transaction was a consumer credit transaction, not a business transaction.'" Machedal v. Household Fin. Realty Corp., 2009 WL 113474 at *5 (N.D.N.Y. 2009)(citation omitted). "'In making the determination of whether a transaction was primarily consumer or commercial in nature, the court must examine the transaction as a whole and the purpose for which it was intended." Id. As already indicated, the evidence in this case points to the parties' understanding that the loan was primarily for the purpose of renovating Plaintiff's automotive business, notwithstanding the fact that the funds received may initially have been used elsewhere by Plaintiff and his wife. The loan documents so indicate, and Plaintiff conceded as much in his deposition.

Finally, Plaintiff asserts that he did not understand the "lockout" provisions and, in any event, those provisions are ambiguous. However, Tennessee courts have long held that, in cases not involving fraud, if one "fails to read the contract or otherwise to learn its contents, he signs the same at his peril[.]" State v. Good Times, Ltd., 2009 WL 4334894 at *4 (Tenn. Ct. App. 2008)(collecting cases). "It is axiomatic that a party may not be allowed to deny an obligation assumed under a signed contract by simply pleading that she did not read or did not understand the contract." Hill v. NHC Healthcare/Nashville, LLC, 2008 WL 1901198 at *9 (Tenn. Ct. App. 2008)(collecting cases).

Nor is the agreement related to the lockout provisions ambiguous. "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one [and a] strained construction may not be placed on the language used to find ambiguity where none exists." Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare, 368 F.3d 894, 897 (6th Cir.

2004)(applying Tennessee law, citations omitted). "However, '[a] contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions.'" Id. at 897-98. "Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be favored in their construction." Victoria Ins. Co. v. Hawkins, 31 S.W.3d 578, 581 (Tenn. Ct. App. 2000).

In this case, the Term Sheet clearly defines "lockout" as a seven-year period during which the loan cannot be repaid without the borrower being required to pay the prepayment penalty plus all interest on the outstanding principal accrued during the lockout period. The Deed of Trust clearly informs the borrower that any prepayment may be made only in accordance with the Promissory Note between the parties. The Promissory Note informs the borrower that if he prepays the loan, he will be required to pay an amount equal to five percent of the unpaid principal balance and all accrued interest on the outstanding principal to the date of the prepayment. See. Achee, 2009 WL 347751 at *1 (describing same lockout provisions and indicating that it was not usurious for borrower seeking to prepay loan to have to pay $389,355.85 on a $280,000.00 loan only a couple of months after the loan was taken).

In reaching the foregoing conclusion that summary judgment is appropriate, the Court is not unsympathetic to Plaintiff's predicament, particularly in these difficult economic times. Nor does the Court necessarily condone what could be charitably characterized as a sharp business practice by a lender who, from all outward appearances, may not be interested in fostering continued customer relations. However, the Court is not at liberty to ignore either the parties' clear agreement or Tennessee law.

13

## IV. **CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment (Docket Entry No. 17) filed by Defendants M & T Bank and Silver Hill Financial, LLC will be granted and Plaintiff's Complaint will be dismissed.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

14